BOARD OF EDUCATION OF PORT HURON v. DANIEL N. RUN-NELS, CITY TREASURER.

*Mandamus—Custody of school funds—Evidence aliunde.*

1. Mandamus does not lie to enforce a contract; as where the relator is a bank seeking to compel the respondent, an officer of a public board, to deposit with it, as required by law, funds to the custody of which it is entitled under a bid made therefor to the board.

2. A board of education is entitled to mandamus to compel its treasurer to pay its funds to the proper depositary under the law.

3. School moneys are distinguishable on the tax-rolls, and when received by the treasurer of a municipal board of education are at once pay-

able to the proper depositary without waiting for the comptroller to formally apportion and separate the various taxes paid by the collector to the treasurer.

4. The treasurer of a municipal board of education cannot go back of board records which on their face show valid action, for the purpose of avoiding the performance of his duty to deposit the funds paid to him with the custodian who appears by the records to be entitled to them.

Mandamus.   Submitted May 6.   Granted May 13.

*O'Brien J. Atkinson* for relator.

*Stevenson & Phillips* for respondent.

CAMPBELL, J.   The present controversy is upon an application for a mandamus to compel respondent, who is ex officio treasurer of relator, to deposit the school moneys in his hands in the First National Bank of Port Huron, which made an accepted bid for the custody of such funds, and gave security to receive and hold them subject to the call of relator, as required by law, and to allow four per cent. interest.   Respondent refused to transfer the moneys.   An application by the bank for a mandamus was refused by us, as not being a proper remedy to enforce the contract.   But now the board of education itself asks us to compel its own treasurer to perform a specific duty imposed by law.   This we have regarded as competent.

The only objections which respondent raises by his answer are aimed at questions of formal regularity in the action of the board in the steps taken which resulted in the contract with the bank.   Respondent also undertakes to figure out that there are no funds which are in condition to be transferred, because the comptroller has not made a formal apportionment and separation of the various taxes received by respondent from the collectors, so as to credit them to their respective funds.

This last objection is frivolous.   The school moneys are clearly distinguishable on the tax rolls, and when the treasurer receives them, he need not be at a loss what to do with

them.　Moreover, the duty which relator asks him to perform is not confined to a specific sum on hand when the application was made, but is a continuous duty which he violates as often as he keeps any money out of the place where it belongs.

So far as the other objections go they have no more foundation.　The statutes provide what notices shall be given and what steps shall be taken to authorize the contract to be made with a bank to receive deposits.　All of these conditions appear by the board records to have been brought to the notice of the board, and to have been complied with. Respondent cannot be permitted to go into a collateral inquiry whether the paper, recognized as the city paper and acting as such, had really acquired the right to be so treated by a literal compliance with all of the charter requirements.　We have no reason to doubt this, but respondent has no right to dispute it in this way.　The same is true in regard to the other formalities.　A contract has been made, and it appears to have been regularly made, unless the recitals in the records are false.　When the board of education, in full view of what the law requires, have acted on their responsibility in a way which seems to be regular, their servants cannot be permitted to refuse obedience and call on the board to prove, as respondent now does, what must be presumed valid without further inquiry.　Faith and credit are due to their action as this record recites it.

It is difficult to see what reason respondent has had for refusing to put the school moneys where, under the charter, their deposit exonerates him from a large share of responsibility for their safe custody.　He cannot use the money himself without violating his duty, and by keeping it out of the bank he not only deprives the board of a new security for its safe keeping, but also of interest which it might gain from the deposits.　The record gives no excuse for this serious breach of official obligation, and the great delay caused by it is a serious wrong.

On the argument a new reason is propounded why the writ should not now be granted.　It is now claimed that the contract expired on April 30, during this present term of Court.

This is not clear to us.    The statute does not require the contract to be confined to so short a period, and the bids and securities are not so confined.    The only place where the date mentioned appears is in the obligation of the board to leave the money in the bank that long.    But the statute and the contract compared, show that by a two-thirds vote the deposits might be recalled at any time, and we do not think that we are required to assume the right of the board to keep up the deposits is ended.    If the arrangement is ended, that may be a reason why respondent may hereafter excuse himself from the consequences which might flow from a neglect to obey the mandamus, which we shall award, leaving it for the relator to issue it or not, as the facts may require.

The relator's application is granted with costs.

The other Justices concurred.